IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| RANDAL TROY ATKINSON ) | |
| ) | |
| v. ) | No. 2:10-0082 |
| ) | Judge Wiseman/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To:  The Honorable Thomas A. Wiseman, Jr., Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 18), to which defendant has responded (Docket Entry No. 24). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 12),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED, and that the decision of the SSA be AFFIRMED.

### I. Procedural History

Plaintiff's DIB and SSI applications were protectively filed on September 26,

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

2007. (Tr. 9, 41-42) Plaintiff alleged disability beginning August 15, 2007, due to prostate cancer. Id. His applications were denied at the initial and reconsideration stages of agency review, whereupon plaintiff filed a request for de novo hearing by an Administrative Law Judge ("ALJ"). (Tr. 60-61)

Plaintiff's case was heard by the ALJ on November 6, 2009. (Tr. 18-33) Plaintiff appeared with counsel before the ALJ, who received testimony from plaintiff and from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until December 30, 2009, when he issued a written decision in which he found plaintiff not disabled and denied his applications for benefits. (Tr. 9-14) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since May 9, 2008, the amended alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairment: prostate cancer (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 18, 1962 and was 44 years old, which is

defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from the amended onset date of May 9, 2008 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 11-14)

On July 17, 2010, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-5), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c)(3). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

On August 28, 2007, at the age of 44, plaintiff was diagnosed with prostate cancer after routine blood tests revealed an elevated prostate-specific antigen score. (Tr. 159) The urologist who made the diagnosis, Dr. Timothy R. Collins, advised plaintiff that he needed to have a prostatectomy, or removal of the prostate gland. Id. On December 6, 2007,

it was noted that plaintiff remained asymptomatic, but that the cancer still needed treatment, an issue that was complicated by plaintiff's lack of insurance. (Tr. 228) On December 20, 2007, Dr. Joseph Lanzillo, M.D., a radiation oncologist, "essentially confirmed Dr. Collins' recommendations" with regard to plaintiff's treatment: that "for a young man of age 44 with a Gleason's score VII, Stage T2b prostate cancer, his best option is a surgical one." (Tr. 207) Dr. Lanzillo further noted during this consultation that plaintiff had "minimal symptoms referable to his cancer other than nocturia," and had "no symptoms referable to metastatic disease." (Tr. 208) On February 26, 2008, Dr. Collins noted that he had talked to Dr. Sam Chang at Vanderbilt University Medical Center, who had agreed to assume plaintiff's care, and that plaintiff would need a metastatic work-up prior to definitive treatment. (Tr. 183)

On March 27, 2008, Dr. Chang performed the work-up of plaintiff in order to define the options for treatment of plaintiff's cancer. (Tr. 253-54) Dr. Chang noted that plaintiff had "no evidence of extraprostatic disease on examination," and that "[i]t is clear that he has, as I described to him, clinically localized prostate cancer." (Tr. 253) After discussing the range of treatment options, it was decided that plaintiff would proceed with radical prostatectomy. Plaintiff evidently underwent this procedure in May 2008. (Tr. 20, 153, 264)

On June 4, 2008, plaintiff's medical file was reviewed by an agency consultant, Dr. Reeta Misra, M.D., who opined that plaintiff's prostate cancer was an "impairment [that] is severe but will improve to nonsevere within 12 months with proper management." (Tr. 259)

Since plaintiff's prostate removal surgery, he has been treated by nurse practitioner Wendy Reed at the Fentress County Department of Health. Nurse Practitioner

4

Reed prescribed medications to treat plaintiff's hypertension, allergic rhinitis, and arthritis, and noted at his most recent visit, on September 22, 2009, that his physical examination was normal. (Tr. 261-67) In an undated opinion letter that appears to have been received via facsimile on November 6, 2009, Ms. Reed offered the following in support of plaintiff's claim:

> Mr. Atkinson originally came to the Fentress County Health Department in June of 2007 as in indigent patient without insurance in need of medical care, where he has been treated for chronic medical conditions and receives his medications. He had a critically high prostate antigen level of 15.6 which indicated risk of prostate cancer. Mr. Atkinson was referred for biopsy and further treatment, which was severely delayed due to no insurance coverage. Mr. Atkinson had to see several doctors before finding one to treat him in 2008 at Vanderbilt. Mr. Atkinson has hypertension, chronic rhinitis, and arthritis, which he currently takes medication for. Mr. Atkinson's medical conditions have lead him into a semi-stable status [] which at any time could exacerbate causing medical deterioration. In my opinion with Mr. Atkinson's chronic medical conditions there is no way he could work, nor do I think he will ever be able to return to work considering the stages of his medical conditions and his age.

(Tr. 287)

At his November 6, 2009 hearing before the ALJ, plaintiff testified that he was 46 years of age, having been formally educated through the tenth grade and subsequently earning his GED. (Tr. 21) He confirmed that his prostate surgery was performed at Vanderbilt free of charge, due to his lack of insurance, but that Vanderbilt would not agree to provide follow-up care for free. (Tr. 23) He testified that since the surgery he has felt weak, without any energy at all. He had been able to work prior to that point (Tr. 23, 109), but had to quit his job in order to qualify for the free surgery at Vanderbilt. (Tr. 23) When asked if he could work at present, plaintiff testified that "I can do a little bit, but I don't know about working 40 hours a week." Id. He testified that he spent most of his waking

5

hours lying on the couch, watching television. Because he also slept on the couch overnight, he estimated that he spent 22 or 23 hours of each day lying on the couch. (Tr. 23-24) He stated that he was not in any significant pain, but was mainly limited by his fatigue. (Tr. 24-25) He went to the county health department every three months in order to get his prescription blood pressure and cholesterol medications. (Tr. 24) He testified that he lived with his 71-year-old mother, who still worked full-time. (Tr. 25) He is still able to drive short distances without any significant difficulty. (Tr. 26) He testified that he is 5'11" and approximately 280 pounds, and that he smoked between a half pack and a pack of cigarettes per day. (Tr. 26-27)

The vocational expert testified at the hearing that plaintiff's past relevant work included heavy and medium exertional work. (Tr. 28) He further testified to the existence of a number of jobs in response to the ALJ's hypothetical questions concerning the employability of a person limited to, e.g., light or sedentary work, while also acknowledging that a person who has to lie down with any frequency during the workday, or suffers fatigue to a moderately severe or severe degree, or is limited as described in plaintiff's testimony, would be unable to perform any work. (Tr. 28-32)

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)).  Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached.  Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

B. <u>Proceedings at the Administrative Level</u>

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  <u>Id.</u> at § 423(d)(3).  In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations.  Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be

found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483,

8

490 (6th Cir. 1988).

## C. Plaintiff's Statement of Errors

In support of his motion for reversal of the ALJ's decision, plaintiff argues that the ALJ erred in giving no weight to the opinion of Nurse Practitioner Reed; that, by reference to § 14.00(H) of the Listing of Impairments, the ALJ was required to consider plaintiff's failure to pursue medical treatment for his allegedly extreme fatigue in light of the fact that he cannot afford treatment other than at the county health department; and, that plaintiff's subjective complaints of fatigue should have been deemed substantially supported by the medical evidence of "the severity of claimant's cancerous condition as noted by the objective levels of his cancer as found by treating specialists." (Docket Entry No. 19 at 4-6)

The undersigned finds no error on any of these grounds. First, Nurse Practitioner Reed is not an acceptable medical source under the regulations, 20 C.F.R. §§ 404.1513(a), 416.913(a), and so her opinions are not entitled to the deference typically owed a treating source. In any event, her opinion that plaintiff cannot work because his "semi-stable" condition may deteriorate at any moment finds no support in the record; her own treatment notes reflect only concerns with his rising cholesterol level and other such general health issues. (Tr. 261-67) Moreover, the opinion that plaintiff cannot work is not a medical opinion, but an opinion on the ultimate legal issue of disability which is reserved to the SSA. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). While Nurse Practitioner Reed's opinion is not to be discarded out of hand, Soc. Sec. Rul. 06-03p, the ALJ's rejection of her concerns for plaintiff's future ability to work is supported by substantial evidence.

Secondly, while the record of plaintiff's medical treatment following his

9

alleged date of disability onset is largely barren, the ALJ rightly noted that it contains no references to any complaints of fatigue when plaintiff presented for treatment at the Fentress County Health Department. (Tr. 261-67) Notwithstanding plaintiff's inability to afford the most desirable follow-up care, the ALJ was plainly justified in concluding that if plaintiff's post-surgery fatigue were such as to confine him to the couch all day every day, as alleged, he would certainly have at least complained of such disabling fatigue on those occasions when he did seek medical treatment. (Tr. 12) The ALJ thus properly considered the asserted reason for plaintiff's lack of treatment.

Finally, the undersigned finds no support for plaintiff's assertion that his pre-surgery cancer was so severe as to justify the assumption that it was not entirely eliminated by the prostatectomy, and that the objective indicia of its severity should be deemed supportive of the credibility of his complaints of debilitating fatigue. Plaintiff argues that his pre-surgery PSA readings and the notation that his cancer was "grade 5-7" (Tr. 227) support the notion that it was extremely aggressive and likely to metastacize. See also Tr. 152-56. However, it appears that the "grade 5-7" is a Gleason score indicating an intermediately aggressive pathology. (Tr. 155) This comports with the radiation oncologist's report of "a Gleason's score VII, Stage T2b prostate cancer." (Tr. 207) Plaintiff's stage 2 cancer was clearly localized to the prostate gland, and not metastatic (Tr. 208, 253); it was therefore appropriately treated by removing the prostate and surrounding tissue, without more aggressive, systemic therapy measures that would be expected to have disabling residual effects, as concluded by the ALJ. (Tr. 13) There is no evidence of record to suggest otherwise. While plaintiff was deemed to have carried his evidentiary burden of proving

10

that he could no longer perform his past relevant heavy and medium work due to residuals of his prostate cancer and surgery, there is a clear failure of proof regarding his alleged inability to perform light and sedentary work due to debilitating fatigue. Aside from the few notes of plaintiff's post-surgery treatment by the Fentress County Health Department, the other pertinent medical evidence includes the assessment of a nonexamining agency consultant that plaintiff's cancer-related impairment would be expected to improve within a year of the surgery to the point that, with proper management, it would not cause even minimal work limitations. (Tr. 259) Considering this evidence (Tr. 12-13), the ALJ conducted the proper analysis of plaintiff's subjective complaints of fatigue pursuant to, e.g., 20 C.F.R. §§ 404.1529 and 416.929, and his assessment of the credibility of those complaints is reasonable and supported by substantial evidence. See Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003).

In sum, the ALJ's conclusion that plaintiff remained capable of performing a significant number of light jobs in the economy despite his residual symptoms following cancer surgery is supported by substantial evidence on the record as a whole, and is therefore deserving of affirmance.

IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the

SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 19th day of September, 2011.

                                               <u>s/ John S. Bryant</u>
                                               JOHN S. BRYANT
                                               UNITED STATES MAGISTRATE JUDGE